[Cite as *In re K.F.*, 2022-Ohio-2121.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.F.
     D.F.

C.A. No.     30054

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 12 0836
               DN 20 12 0837

DECISION AND JOURNAL ENTRY

Dated: June 22, 2022

HENSAL, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of disposition of her two children, issued by the Summit County Court of Common Pleas, Juvenile Division. This Court reverses and remands.

I.

{¶2} Mother is the biological mother of D.F., born November 22, 2009, and K.F., born June 29, 2012. Y.C. is the biological father of D.F., and J.K. ("Father") is the biological father of K.F. Both children had been living exclusively with Mother when the incident giving rise to the case below occurred.

{¶3} Very late one evening, after she became overwhelmed by ongoing difficulties with her downstairs neighbors, Mother began making noise and throwing things onto the floor of her apartment. The neighbors called the police who arrived to find Mother yelling angrily and bleeding

from cuts on her hand. The police transferred Mother to the hospital and took the children into protective custody pursuant to Rule 6 of the Juvenile Rules of Procedure.

{¶4} Summit County Children Services Board ("CSB" or "the agency") filed complaints the next day, alleging that the children were dependent. The agency alleged that the police were called to Mother's home regarding a "mental break down," that Mother had attempted suicide on an earlier occasion resulting in a history with another child welfare agency, that Y.C. had a criminal history involving felonious assault and child endangering, and that Father had a history of violence which included Mother as the victim. After a shelter care hearing, the children were ordered into the emergency temporary custody of the agency. The children were placed together in a foster home.

{¶5} The parents all appeared for adjudication during which each waived the right to a hearing and stipulated that the children were dependent. Prior to the initial dispositional hearing, Mother filed a motion for legal custody, or alternatively, legal custody under the protective supervision of CSB; Father filed a motion for legal custody, with or without protective supervision, of K.F.; and Y.C. filed a motion for legal custody of D.F. At the dispositional hearing, Y.C. withdrew his motion for custody. The assistant prosecutor informed the trial court that CSB supported Father's motion for legal custody of K.F. under the agency's protective supervision, and that the agency was seeking temporary custody of D.F. and would keep the siblings together by placing D.F. in Father's home.

{¶6} After hearing the evidence presented at the dispositional hearing, the magistrate found that it was in the best interest of K.F. that she be placed in Father's temporary custody under the agency's protective supervision. The magistrate further found that an award of temporary custody of D.F. to CSB, which would place him in Father's home with his sister, was in that child's

best interest. Mother was granted supervised visitation. Mother filed a timely objection to the magistrate's decision, arguing that the magistrate's best interest determinations were contrary to the evidence. Mother supplemented her objection after the transcript of the hearing was filed, developing her argument in greater detail. Neither CSB nor either father filed a response in opposition to Mother's objection.

{¶7} The juvenile court overruled Mother's objection. Although it cited several examples when expressing its concern regarding the "lack of cohesive information [CSB] seems to be providing Mother about their recommendations and the issues which needed to be addressed in order for her to reunify with the children[,]" the trial court found that the agency's requested dispositional orders, which continued K.F.'s and D.F.'s removals from Mother's home, were in the children's best interest. Accordingly, the juvenile court ordered an award of temporary custody of K.F. to Father under the agency's protective supervision, and an award of temporary custody of D.F. to CSB whereby that child would be placed in Father's home with his sibling. Mother timely appealed the juvenile court's dispositional judgment.

II.

{¶8} Mother asserts two assignments of error. Although inartfully crafted, this Court construes them as arguments that the juvenile court's initial disposition, which ordered K.F. into the temporary custody of Father and D.F. into the temporary custody of CSB with placement with K.F.'s father, is against the manifest weight of the evidence. This Court agrees.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment]

must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶10} After a child is adjudicated abused, neglected, or dependent, the juvenile court may issue one of the various possible dispositional orders, including committing the child to the temporary custody of a public children services agency, a parent, or any other approved person. R.C. 2151.353(A)(2)(a)/(c)/(f). *See also* Juv.R. 34(D)(2). Neither the statute nor the rule enunciates a test for determining when it is appropriate to place a child in the temporary custody of any person or the agency. Nevertheless, it has long been the precedent in Ohio that the overriding consideration in child custody matters is the best interest of the child. *See, e.g., Clark v. Bayer*, 32 Ohio St. 299, 310 (1877) ("[I]n all cases of controverted right to custody, the welfare of the minor is first to be considered."). The legislature has also mandated the liberal interpretation and construction of Chapter 2151 to "*provide for the care, protection, and mental and physical development of children * * *,* whenever possible, in a family environment, separating the child from the child's parents only when *necessary for the child's welfare* or in the interests of public safety[.]" (Emphasis added.) R.C. 2151.01(A). Accordingly, this Court reviews to determine whether the juvenile court's finding that the best interest of K.F. and D.F. warrants their placements in the temporary custody of Father and CSB, respectively, is against the manifest weight of the evidence.

{¶11} In regard to best interest pursuant to Chapter 2151, the statutory scheme is devoid of specific considerations outside the context of an award of permanent custody. However, as Ohio courts are guided by the best interest factors in Section 2151.414(D) (relating to permanent custody) and in Section 3109.04(F)(1) (relating to the allocation of parental rights and responsibilities) in legal custody cases, it is reasonable to seek guidance from those same factors

regarding an award of temporary custody. The Section 2151.414(D)(1)(a)-(e) factors include the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, the children's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. The Section 3109.04(F)(1) factors overlap the above factors, but further include the children's adjustment to their environments; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio.

{¶12} Mother's salient point is that the evidence demonstrates that it is contrary to the children's best interest to be placed under any dispositional order whereby they would reside with Father. Based on a review of the evidence, this Court agrees that the juvenile court's temporary custody and placement orders regarding the children are against the manifest weight of the evidence.

{¶13} Prior to the initiation of the case below, the children were in Mother's legal and physical custody. There was no evidence regarding how often D.F. spent time with his father Y.C., but K.F. had not seen Father for two years before the agency's involvement. Mother testified, and explained to the agency caseworker, that she had severed ties with Father based on his long-term abuse of her. Two years earlier, Father's girlfriend threatened Mother with physical harm when Mother arrived to pick up the children from a birthday party at Father's home. Father refused to discuss the incident with Mother. Mother testified that Father's evasive response was typical of his dismissive attitude regarding any concerns she raised about their ability to effectively co-parent K.F. Viewing this incident as the "last straw," Mother utilized the coping skills she had developed during the counseling she began in an effort to deal with her negative experiences with Father.

Recognizing the difficulty in maintaining positive interactions with Father, Mother decided to sever ties with him to preserve her mental health and protect K.F. from the negative emotional impact of Father's dismissiveness and belittling conduct.

{¶14} At no time during the two-year separation from his daughter did Father pursue formal or informal means of reestablishing contact with the child. Although he testified that he spoke with two attorneys about establishing his visitation rights, he claimed that they told him that they were unable to help him. Father also testified that he did not have the funds to pursue court intervention.

{¶15} Mother testified in detail regarding the impact Father's abuse had on her mental health. Mother sought mental health counseling and other services to cope with the emotional, mental, and sexual abuse she alleged she suffered as a result of Father's behaviors. Mother testified that Father was emotionally cruel, consistently either addressing her negatively or ignoring her completely. In addition, Mother testified that Father frequently compelled her to engage in sexual relations against her will long after they had severed their romantic relationship. Mother testified that Father believed that Mother's consent to their first sexual encounter constituted perpetual consent to future relations. Mother described her sexual relations with Father as rapes. After engaging in mental health services regarding her relationship with Father, Mother was diagnosed with post-traumatic stress disorder.

{¶16} Both the CSB caseworker and guardian ad litem testified that Mother informed them about Father's abusive behaviors towards her. The guardian ad litem acknowledged that Mother's allegations were serious even though there was no evidence to corroborate the abuse. Mother testified that, while she had filed police reports against Father, she did not follow through

because Father laughed at her allegations of abuse and Mother did not think that anyone would believe her.

{¶17} The agency caseworker admitted that Mother told her that Father was emotionally abusive to her for years, that she stopped Father's contact with K.F. to protect the family from Father's manipulative behaviors, and that Father showed very little concern for K.F. The caseworker testified that she discussed Mother's allegations with Father who denied he had ever hit Mother. Father described the parents' issues to the caseworker as "more personal." On cross-examination, Father testified that to the "best of [his] knowledge" he never harmed Mother. The caseworker admitted that she never asked Mother whether she filed any police reports against Father. Neither did she look for any reports.

{¶18} Despite Mother's adamant assertions that Father's abuse caused her significant emotional harm for which she had been consistently engaged in mental health services for years, the agency caseworker testified that she neither fully investigated the allegations nor included a mental health assessment for Father in the proposed case plan to address the issue. Instead, CSB accepted Father's word that he had done nothing which negatively impacted Mother.

{¶19} The matter appealed concerns the initial custodial disposition of the children. That determination was made less than three months after CSB filed its complaints. Those complaints contain allegations of domestic violence by Father against Mother. All three parents stipulated as to the allegations in the complaints which were amended merely to note that Father denied a violent history with Mother. Significantly, the amended complaints do not indicate that Mother's allegations of abuse by Father had been determined to be unfounded. Accordingly, CSB was aware of allegations of serious concerns regarding Father's ability to provide an emotionally and

physically safe environment for the children. Nevertheless, the agency had not fully investigated the concerns regarding Father prior to the hearing.

{¶20} Moreover, the evidence established that Father had not had a relationship with K.F. for two years before the agency filed its complaints, and that he had no biological connection with D.F. Throughout the case, Father only had supervised visits with K.F. Although Father behaved appropriately during those visits, which at times included D.F., the agency had not allowed him any unsupervised visits prior to the hearing. Accordingly, in light of evidence of uninvestigated concerns regarding alleged abuse of Mother by Father, as well as Father's absence from K.F.'s life during the two years prior to the agency's initiation of the cases, and the lack of a familial relationship or other significant bond between Father and D.F., the juvenile court's best interest findings underlying its dispositional orders are against the manifest weight of the evidence.

{¶21} By concluding that the children's placement with Father was against the manifest weight of the evidence, this Court is not determining that K.F. and D.F. should be returned to Mother's legal custody, with or without protective supervision, at this time. Additional evidence not referenced in this opinion clearly indicates that there are issues which must be addressed by all three parents before any of them might demonstrate the ability to provide a safe and stable home for the children. We hold only that, based on a thorough review of the record, the juvenile court's judgment, which found that an award of temporary custody of K.F. to Father, and an award of temporary custody of D.F. to CSB with the intent to place that child in Father's home are in the best interest of the children, is against the manifest weight of the evidence. Mother's combined assignments of error are sustained.

III.

{¶22}  Mother's assignments of error are sustained.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
DISSENTING.

{¶23} I respectfully dissent. I appreciate the majority's position regarding the outstanding concerns as to Father that CSB has not had the opportunity to fully investigate. Nevertheless, the current dispositions of temporary custody are by no means indicative of the children's final placements. Mother has time to work on case plan objectives in an effort to regain legal custody. In addition, CSB has temporary custody of one child and protective supervision of the other, implicating the agency's ongoing duty to monitor the propriety of the children's placements, investigate all concerns, and take emergency measures to remove the children from Father's home should the circumstances dictate that need. Moreover, in the absence of clear evidence that the children are at risk, I cannot conclude that the juvenile court's temporary custody judgments are against the manifest weight of the evidence. Accordingly, I would affirm.

APPEARANCES:

C. F., pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.